## WHEELER v. ALDERMAN.

1. EQUITY—SALE UNDER SATISFIED JUDGMENT.—Where money is lent and a mortgage taken in the faith that entry of satisfaction on a prior judgment is valid, and plaintiff purchases for value under a foreclosure of such mortgage, after which the judgment creditor on notice only to the judgment debtor has the entry of satisfaction vacated, execution issued, levy made and sale advertised, plaintiff, on allegations that he is a purchaser for valuable consideration without notice, and that there was collusion between the judgment creditor and debtor, may invoke the aid of the Court of Equity to enforce these equitable rights and prevent a sale under this judgment, even though there be no actual collusion or fraud between the parties to the judgment.

2. ATTORNEYS—SATISFACTION OF JUDGMENT—PURCHASERS.—At the instance of a debtor an attorney prepared a confession of judgment, voluntarily made to the creditor, and signed himself as plaintiff's attorney, and had the judgment duly enrolled. Afterwards this attorney informed a subsequent purchaser that the judgment was paid and entered satisfaction on the record, signing himself as plaintiff's attorney, and on the faith of these statements the purchaser parted with his money. *Held*, that as to such innocent purchaser, the judgment creditor who claimed the judgment and its lien was estopped from denying that such attorney had authority to represent and act for him.

3. Ibid.—Ibid.—Ibid.—An attorney has no right, as between the parties, to enter satisfaction on a judgment without the actual receipt of the money due thereon, but the attorney's statement of full receipt and satisfaction had will protect subsequent innocent purchasers for value of the land affected by the lien of such judgment.

Before Hudson, J., Barnwell, April, 1890.

This was an action by W. G. Wheeler against H. S. Alderman. The opinion states the case.

*Mr. T. S. Moorman*, for appellant.

*Mr. J. J. Brown*, contra.

September 28, 1891.　The opinion of the court was delivered by

Mr. Justice McIver.　The facts out of which the controversy in this case has arisen are substantially as follows: One Owen Alderman, the brother of the defendant herein, confessed a judgment to him for the sum of upwards of five hundred dollars, which was duly entered in the proper office of Aiken County on the 12th of March, 1885, and a transcript thereof was duly filed in the proper office of Barnwell County, where the land which constitutes the subject matter of this litigation is located, on the 23rd of November, 1885.　Upon the back of this transcript the following endorsement, without date, appears: "Received of the judgment debtor herein the full amount of the within judgment, with the cost and the interest thereon, which is full satisfaction of the same." (Signed) "H. S. Alderman, per Jas. E. Davis, plaintiff's att'y." On the 28th of December, 1885, the said Owen Alderman executed a mortgage on the land in question to the American Freehold Land Mortgage Company of London, to secure the payment of money then borrowed by him from said company; and upon default in the payment of the same, the said land on the 5th of December, 1887, was sold under the power contained in the said mortgage, and bought by W. G. Wheeler, the plaintiff herein.

On the 11th of June, 1888, the said H. S. Alderman, the de-

fendant herein, but the plaintiff in said judgment, moved for and obtained from his honor, Judge A. P. Aldrich, an order vacating the entry of satisfaction above copied, with leave to issue execution on said judgment. This motion was made without notice to the plaintiff herein or to any one else, except the said Owen Alderman, and was based upon the affidavit of said H. S. Alderman that the entry was made without his authority or knowledge, and that nothing had in fact been paid on said judgment. Under the execution thus authorized to be issued to enforce said judgment, the sheriff of Barnwell County levied upon the said land and advertised the same for sale on salesday in July, 1888, as the land of said Owen Alderman.

Thereupon the plaintiff commenced this action to perpetually enjoin said sale. In his complaint, amongst other appropriate allegations, the plaintiff alleges that he has paid the whole amount of the purchase money bid at the sale under the mortgage, and that the subsequent proceedings to open the judgment were intended as a fraud upon him, and will operate as such unless he obtains the relief demanded. The defendant answered, denying all fraud and collusion on his part and denying that the said Jas. E. Davis ever was his attorney, or ever had any authority to receive the money due upon said judgment, or to enter satisfaction thereon.

The testiomony adduced on the part of the plaintiff tends to show that the transcript of judgment was entered in Barnwell County, after the negotiations for the loan of the money by the mortgage company had been completed. But before the money was paid over to Owen Alderman, the agent of the company made a final search of the records, which revealed the fact that the transcript of judgment had been entered a short time before, whereupon this fact was brought to the attention of Owen Alderman, who said the judgment had been paid and should so appear upon the record, and the said Jas. E. Davis, one of the attorneys of record in the said judgment, informed said agent that the judgment was actually paid and had already been marked satisfied upon the back of the transcript in the clerk's office, and that he would also make the entry of satisfaction upon the abstract of judgments, which he subsequently did, to wit, on the 5th of April, 1886. The tes-

timony on the part of the defendant tended to show that Jas. E. Davis, the attorney who took the confession of judgment and who endorsed the entry of satisfaction on the record thereof, was not the attorney of H. S. Alderman, who had never seen or had any communication with him, but acted entirely at the request and under the direction of Owen Alderman, who was his brother-in law, and the defendant in his testimony says that his brother Owen owed him five hundred dollars, besides interest, for money loaned him on the 24th of February, 1883, for which a note was then given; that the said Owen promised to secure him—"he confessed judgment in my favor voluntarily to make me secure for my money, and told me he had confessed the judgment for that purpose;" that no part thereof has ever been paid either to defendant or to any one for him within his knowledge; and that he never authorized any one to collect or satisfy said judgment until he employed Mr. Patterson some time in the spring of 1888, to collect the judgment, and that he had never employed Jas. E. Davis, "did not know him and had never had any business transaction with him."

The issues in the action having been referred to the master, he made his report, finding the facts substantially as we have stated them in the outset of this opinion, and finding as matter of fact "that there was no fraud or collusion on the part of H. S. Alderman, defendant herein;" he found as matter of law that the plaintiff is not entitled to any equitable relief upon the ground of fraud; and "that plaintiff is not entitled to equitable interposition by injunction, on the ground that the judgment has been satisfied." Upon this report and the exceptions thereto filed by the plaintiff, the case was heard by his honor, Judge Hudson, who held "that while there may have been no collusion on the part of the Aldermans, or corrupt purpose in their transactions, at the same time the loan was made to Owen Alderman upon the faith of the statement of the said Owen Alderman and James E. Davis, who acted as attorney for both parties in obtaining the judgment; and while the satisfaction made and acknowledged by said James E. Davis on the records of the county may be incorrect, its effect was to induce the lender of the money to make the loan, and W. G. Wheeler, the plaintiff, to become

the purchaser of the land. To allow a sale under such circumstances would operate as a fraud upon the rights of the party who made the loan, and upon the rights also of the plaintiff, who claims under the lender of the money." He further held that a Court of Equity "will enjoin a sale under execution, although the purchaser acquires no title, where the effect of such sale is to cloud the title of one who like this plaintiff occupies the position ' of an innocent purchaser for value without notice."

Judgment was accordingly rendered perpetually enjoining the enforcement of said judgment against the land in question. From this judgment defendant appeals upon the several grounds set out in the record, which impute error to the Circuit Judge in holding: 1st. That the case made by the plaintiff entitled him to "equitable interference." 2nd. That Davis acted as attorney for both parties in obtaining the judgment, and that H. S. Alderman was bound by the statements made by Davis and Owen Alderman. 3rd. That while the satisfaction entered upon the record of the judgment may be incorrect, yet as it induced plaintiff to become the purchaser of the land, the defendant is thereby estopped by said entry, although said Davis acted without authority and without receiving the money. 4th. In perpetually enjoining the enforcement of the execution against the land in question.

The first ground raises the question of the jurisdiction of the court, and therefore lies at the very foundation of the case. That the Court of Equity has jurisdiction to prevent or remove a cloud upon the title to land in certain cases, cannot be questioned. 2 Pom. Eq. Jur., § 783; 3 *Ibid.*, §§ 1398, 1399; High Injunct., §§ 269–273. The inquiry, then, is whether this is one of the cases in which such jurisdiction can be exercised. It will be observed that the plaintiff in this case bases his claim for protection upon the ground that he is an innocent purchaser for valuable consideration without notice, which is peculiarly an equity doctrine (2 Pom. Eq. Jur., § 738); and also charges fraud and collusion between the creditor, against whose judgment he is seeking protection, and his judgment debtor. It is therefore clearly distinguishable from the cases of *Green* v. *The Bank*, 10 Rich. Eq., 27; *Brown* v. *Dickinson*, 10

Rich. Eq., 408; *Wilson* v. *Hyatt*, 4 S. C., 369; and *Gillam* v. *Arnold*, 32 *Id.*, 503, relied upon by appellant. The plaintiff here does not rely upon a mere *legal* right, which he does not need the aid of a Court of Equity to enforce, as in the cases just mentioned, but his reliance here is upon a pure equity, which does require the aid of a Court of Equity to enforce. The present case is more analogous, though not strictly so, to the case of *Martin* v. *Martin* (24 S. C., 446), where a purchaser of land, with covenant of warranty, was allowed to invoke the aid of equity to protect himself from a prior mortgage held by his grantor. The fact that the master has found that there was no fraud or collusion on the part of H. S. Alderman, which finding has not been disturbed by the Circuit Judge, is not conclusive; for, though there was no *actual* fraud upon the part of H. S. Alderman, yet as the Circuit Judge well says, it would certainly operate as a fraud upon the plaintiff, whether so intended or not, to allow a sale of the land under a judgment which, at the time of plaintiff's purchase, bore upon the face of the record evidence that it was satisfied, even though it should afterwards be made to appear that the entry of satisfaction was without authority.

The second ground of appeal incorrectly represents the Circuit Judge as holding that the defendant herein "was bound by the statements made by Mr. James E. Davis and Owen Alderman, the judgment debtor." We do not understand the decree of the Circuit Judge as being based upon any "*statements*" made either by Davis or the judgment debtor, but upon the fact that Davis, who acted as the attorney for both parties in obtaining the judgment, had acknowledged satisfaction on the record. That Davis *acted* as the attorney for both parties cannot well be disputed in the face of the uncontradicted testimony, that he prepared the papers, and endorsed the name of his firm thereon as attorneys for the plaintiff in said judgment, and advised the filing of the transcript of the judgment; and what is much more significant, signed the name of H. S. Alderman to the entry of satisfaction, "per Jas. E. Davis, plaintiff's att'y;" and the real question is that which the third ground of appeal

was doubtless intended to raise—whether he had any authority so to act for H. S. Alderman.

While it is quite true that there is no direct evidence that Davis was ever employed as an attorney by H. S. Alderman, yet the fact of his having so acted, and that H. S. Alderman is now claiming the benefit of his act, together with other circumstances presently to be alluded to, is sufficient in our judgment to establish that relation between Davis and H. S. Alderman. If the confession of judgment had never been taken, or if, after it was taken in the County of Aiken, the transcript thereof had never been filed in Barnwell County, it is very obvious that H. S. Alderman would have had no pretence of a lien upon the plaintiff's land, and hence if he has any such lien, he must claim it through the judgment which was prepared by Davis, acting as his attorney; and he cannot now claim the benefit, without assuming the corresponding burden, at least so far as the rights of subsequent innocent purchasers are concerned. As is said in 1 Pars. Cont., *51: "An adoption of the agency in part, adopts it in the whole, because a principal is not permitted to accept and confirm so much of a contract made by one purporting to be his agent, as he shall think beneficial to himself and reject the remainder." Upon this principle H. S. Alderman cannot be permitted to claim the benefit of the act done by Davis as his attorney, and at the same time repudiate his attorneyship.

In addition to this, it appears from the defendant's own testimony that when the money was loaned for which the judgment was taken, it was on the promise of the borrower to secure or make safe the lender, and that the judgment was voluntarily confessed by Owen Alderman to H. S. Alderman for that purpose, and H. S. Alderman was told by Owen that he had confessed the judgment in accordance with his promise. It would seem, therefore, that H. S. Alderman, when he loaned the money to his brother Owen, relied upon him to secure the same, and when Owen employed Davis to take the confession, for the purpose of carrying out his promise, he was really acting for the benefit of H. S. Alderman, who cannot now be permitted to avail himself of such benefit and at the same time repudiate the agency through which it was secured. It seems to us, therefore, that Davis must

be regarded as the attorney of H. S. Alderman in taking the confession of judgment. If so, then he had authority to receive the money due thereon, and enter satisfaction on the judgment. *Pool* v. *Gist & Roddy*, 4 McCord, 259; *The Treasurer* v. *McDowell*, 1 Hill, 184; *Taylor* v. *Easterling*, 1 Rich., 310.

It is very true that an attorney has no authority to enter satisfaction without the actual receipt of the money, and, *as between the parties*, such an entry of satisfaction without the actual receipt of the money may be vacated upon a showing to that effect. But where the rights of third persons intervene, the question of estoppel comes in, as it would operate a fraud upon an innocent purchaser without notice to allow a judgment which, when he purchased, bore upon its face the evidence that it was satisfied, to be opened and used as a lien upon the property purchased, even though it should be afterwards made to appear that the satisfaction was improperly entered. See *City Council of Charleston* v. *Ryan*, 22 S. C., 339. In the present case it appears that when the money was loaned upon the mortage, under which the land was sold, and when the plaintiff purchased, the judgment which is now sought to be set up as a lien on the land bore upon its face not only an entry of satisfaction, but also a declaration of the receipt of the money due, so that the records, which purchasers are invited and expected to examine before purchasing, showed that there was no lien upon the land, and it would be a palpable fraud upon the plaintiff herein to allow the judgment to be set up as a lien upon the land, because it has been *subsequently* made to appear that no money was in fact received and the entry of satisfaction was made without authority. Any other view would shake confidence in the public records and jeopardize many titles acquired upon the faith of what such records show, and cannot for a moment be entertained.

The fourth ground is too general in its character to call for further notice than what it has incidentally received in considering the other grounds.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.