### WERBER v. CAIN.

1. MORTGAGES—PURCHASER FOR VALUE WITHOUT NOTICE.—A GUARDIAN has authority to execute a discharge and satisfaction of a mortgage to him as such, and the release in this case, "the within mortgage is hereby released and discharged and clerk of court is authorized to satisfy same of record," and indorsed on the record of the mortgage, is sufficient to release the lien of the mortgage in favor of subsequent mortgagee as against wards, although the mortgage debt had not in fact been paid, without evidence of fraud or collusion, or notice that mortgage debt had not been paid, and there is nothing in the form of the release that would put such mortgagee on inquiry as to whether the mortgage debt had been actually paid.

2. IBID.—IBID.—IBID.—Where a guardian takes a conveyance to himself as an individual of land over which he holds a mortgage as guardian, leaving open the guardian mortgage to protect against subsequent encumbrances, and sells a portion of the land, satisfies the guardian mortgage as to such part, applies most of the purchase money to the guardian mortgage debt and a small part to the compromise of a junior mortgage, the purchaser takes the land free from the lien of the guardian mortgage as against the wards.

Before WATTS, J., Sumter, January, 1904. Affirmed.

Action by Catherine M. Werber against W. O. Cain, in his own right and as guardian of his wards, *et al.* From Circuit decree, the wards appeal.

*Messrs. C. L. Cuttino* and *Cooper & Fraser,* for appellants, W. M. and S. R. Cain, Cassie E. George and Helen E. Ramsey, cite: *Mortgagee should have ascertained if guardian mortgage debt had been paid:* 14 S. C., 86. *Guardian has no power to release security without consideration:* 9 Ency., 71; 11 S. C., 551; 13 S. C., 163; 9 Rich. Eq., 194; Spears Eq., 309.

*Messrs. Thomas & Gibbes,* for appellant, Annie May Cain, cite: *As to extent of guardian's authority over security of ward:* 18 Ency., 2 ed., 71; 24 Ibid., 303; 13 Rich. Eq., 324; 11 S. C., 551; 3 Rich. Eq., 156; 11 S. C., 408; Rich. Eq. Cas., 171; 2 Hill Ch., 574; 53 Miss., 660; 28 Pa. St., 378; 31 Tex., 239; 7 Tex. Civ. App., 263; 1 Hill Ch., 409. *As to the effect of the release indorsed on the guardian mortgage:* Code 1902, 2375; 14 S. C., 56; 2 Jones on Mtg., 3d, sec. 984; Abbott Clerk's Conv., 641; 34 S. C., 533. *There was notice to put mortgagee on inquiry as to breach of trust:* 3 Rich. Eq., 4; 1 McC., 231; 14 S. C., 321; 21 Ency., 2 ed., 585; 67 S. C., 377; 14 S. C., 86.

*Messrs. Lee & Moise,* for plaintiff, and *Mr. I. C. Strauss,* for Jane Rose, David Nathaniel and W. O. Cain, contra, cite: *Release sufficient to discharge lien of mortgage:* 34 S. C., 533; 24 S. C., 48; 22 S. C., 339; 1 Jones on Mtg., sec. 989; Code 1902, 2376; 15 Ency., 1 ed., 878; 11 S. C., 563; 14 S. C., 66. *Guardian is presumed to act in interest of his ward:* 4 Rich. Eq., 67; 22 Ency., 2 ed., 1270; 14 S. C., 458; 5 Rich., 536; 20 Am. St. R., 595. *Plaintiff not knowing of a breach of trust cannot be held responsible:* 34 S. C., 534; 24 S. C., 48.

April 10, 1905.    The opinion of the Court was delivered by

MR. JUSTICE JONES.    On January 28th, 1887, Emma F. Mellett executed her bond and mortgage upon 403 acres of land in Sumter County to W. O. Cain, as guardian of the children of his brother, R. M. Cain, deceased, to secure the sum of $3,000.    In December, 1892, Emma F. Mellett applied to plaintiff, then Catherine E. Moses, now Werber, through her brother, H. C. Moses, for a loan of $3,000, which loan the plaintiff was willing to make upon security of a first mortgage upon said land.    Upon the importunity of Mrs. Mellett, who was his sister, and in financial distress, W. O. Cain, the guardian, indorsed upon the mortgage of 1887 the following: "The within mortgage is hereby released and discharged and the clerk of the court is authorized to satisfy the same of record.    Dated December 26th, 1892. (Signed) W. O. Cain, guardian;" and on December 29th, 1892, this indorsement was entered by the register of mesne conveyance upon the record of the mortgage, with the statement that said indorsement appeared upon the original mortgage.    The mortgage thus indorsed was exhibited to H. C. Moses, agent for plaintiff, and he thereupon, relying upon the same as a valid discharge of the mortgage, delivered a check for $3,000 to the agent of Mrs. Mellett and received the mortgage to plaintiff securing said loan, said mortgage being dated December 17th, 1892, but not delivered until after the mortgage of 1887, with said indorsement thereon, was exhibited to him by the agent of Mrs. Mellett.    On same day, the plaintiff executed a mortgage on same premises to W. O. Cain, as guardian, to secure $3,000, which mortgage, by its terms, was made second in order of priority to the mortgage to plaintiff.    Mrs. Mellett paid nothing to the guardian, W. O. Cain, for the execution of the release of the mortgage of 1887, and the guardian accepted the mortgage of 1892 as junior to plaintiff's mortgage in order to aid his sister to secure said loan from plaintiff, at the same time he testifies that he believed the land was ample security

for both mortgages. Neither the plaintiff nor any one act-
ing for her in the transaction knew anything as to the trans-
action between Mrs. Mellett and W. O. Cain, guardian,
except what was inferable from the terms of the indorsement
placed by W. O. Cain upon mortgage of 1887.

The plaintiff is now seeking to foreclose her mortgage for
balance due thereon and the first and main question which
arises upon this appeal is whether, upon the facts stated, the
mortgage of 1887 must still be regarded as a subsist-
ing prior lien in behalf of the wards of the said
guardian, notwithstanding the said attempted release
by the guardian, and this, of course, depends upon the force
and effect to be given the terms of said release with respect
to plaintiff claiming to be an encumbrancer for valuable con-
sideration without notice.

The general rule is that "a guardian as the officer of the
court of equity is charged with the preservation of all the
rights and interests of the ward. He cannot, however, gene-
rally change the nature or diminish the capital of the estate,
but with this exception, he is authorized to do any act for
the infant which a prudent man in the management of his
own business would do." *Capeheart* v. *Huey,* 1 Hill Ch.,
409 ; *Long* v. *Cason,* 4 Rich. Eq., 66.

It is clearly within the apparent authority of the guardian
to execute a discharge and satisfaction of a mortgage to him
as such, and cause the same to be entered of record, as it is
his duty to collect and give acquittance for debts due him
as guardian. There being no specific form of release of a
mortgage prescribed by statute, we agree with the Circuit
Court that the release in this case is sufficient to work a
discharge of the mortgage in favor of a stranger dealing with
a party·on the faith of it. It is contended that the terms of
the release give notice that payment has not been made, and,
therefore, that the release was in breach of the guardian's
duty, but we do not take that view. In the absence of any
evidence of fraud, or collusion, or knowledge affecting plain-
tiff with notice that the mortgage had not in fact been paid,

plaintiff had a right to presume that the guardian was not acting in conflict with his duty. When a mortgagee indorses upon a mortgage that it has been released and discharged and the clerk is authorized to enter satisfaction on the record, it is at least presumptive or *prima facie* evidence that the mortgage debt has been paid, so far as the one executing the release is concerned. So that there is nothing in the form of the release that should have put the plaintiff upon inquiry as to whether the mortgage had in fact been paid, or to suggest a breach of the guardian's trust.

This case is distinguishable from *Lynch* v. *Hancock*, 14 S. C., 85. In that case, of those claiming the right of subsequent purchasers for valuable consideration without notice, Hancock had purchased before the attempted release of the mortgage, and Rhett had made his contract for purchase from Hancock before the indorsement was placed upon the mortgage. Their contracts, therefore, had in no wise been influenced by the subsequent attempted release of the mortgage lien. Arthur and Johnson, who made a contract to purchase from Rhett after the attempted release of the mortgage, knew that Rhett had no title and no right to demand title until he had complied with his agreement with Hancock, which he had never done. They, therefore, could not, by mere payment of the purchase money to Rhett, who had no title, put themselves in position of purchasers for valuable consideration without notice, for they had acquired nothing more than an equity and their equity was subordinate to a prior equity of Muller or Wadlington, who had acquired rights as assignee under the mortgage before its attempted release by Fair, who had no authority to release the mortgage beyond his own interest therein.

This case falls within the principles announced in *Wheeler* v. *Alderman*, 34 S. C., 534, 13 S. E., 673, and *City Council of Charleston* v. *Ryan*, 22 S. C., 339.

The next question relates to the rights of defendants, Jane Rose and David Nathaniel, claiming to be subsequent purchasers for valuable consideration without notice. On Jan-

uary 5th, 1895, Emma F. Mellett executed a deed, with general warranty, conveying said premises to W. O. Cain, individually, in which deed it was stipulated that the mortgage by Mrs. Mellett to W. O. Cain, as guardian, should remain open to protest against subsequent encumbrance. On November 29th, 1902, W. O. Cain executed a deed, with general warranty, conveying ninety-five acres of said premises to Jane Rose and David Nathaniel upon the payment of $1,500 as consideration. Of this consideration, $1,423.85 was applied to the mortgage previously mentioned, executed by Mrs. Mellett to W. O. Cain, as guardian, in 1892; and W. O. Cain, on December 16th, 1902, executed a release of his mortgage lien on said ninety-five acres. The remainder of the consideration paid by defendants, Rose and Nathaniel, $76.15, was applied to the compromise and discharge of a junior mortgage on said premises held by J. Ryttenberg & Son, amounting to seven or eight hundred dollars, with a view to clearing the land of this encumbrance, which, as long as it remained unadjusted, would be an obstacle to a voluntary sale of the land.

In view of what has already been said with reference to the mortgage of 1887, and in view of the fact that practically the entire purchase price was applied towards the extinguishment of the mortgage of Emma F. Mellett to W. O. Cain, as guardian, there is nothing to prevent the Ryttenbergs from occupying the position of purchasers for valuable consideration without notice. With respect to the application of the comparatively small sum of about $75 to the extinguishment of the Ryttenberg mortgage, there is nothing in the record which should have induced Rose and Nathaniel to suspect this was not to the interest of wards; on the contrary, their guardian was thereby enabled to collect the sum of $1,425.85 on the indebtedness due them, and this transaction would naturally tend to prevent any possible litigation or expense in clearing the premises of the Ryttenberg encumbrance.

The decree of the Circuit Court was very carefully con-

sidered and satisfactorily disposed of the issues involved in this case, and we might well have contented ourselves with merely affirming the same without comment.

The exceptions are all controlled by the foregoing conclusions and must, therefore, be overruled.

The judgment of the Circuit Court is affirmed.

Mr. Justice Gary *did not sit in this case because of illness.*